IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| SCOTT W. GRAVES | § | |
| VS. | § | CIVIL ACTION NO. 9:16-CV-170 |
| GREGORY L. GRAY, *et al.,* | § | |

MEMORANDUM OPINION AND ORDER

Plaintiff, Scott W. Graves, an inmate formerly confined at the Gib Lewis Unit with the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against defendants Terry L. Andrews, Richard Bledsoe, Joe S. Collins and Joseph M. Pellegrino.

Factual & Procedural Background

Plaintiff alleges that on February 19, 2016, he was in an altercation with correctional officers where he was picked up in the air and slammed into a cell door while handcuffed with his hands behind his back. Amended Complaint (docket entry no. 29). Plaintiff contends that he was then slammed to the floor, punched in the face, stomach, back, legs, and thighs and his head was slammed to the floor at least two times. *Id*. Plaintiff states this was done by defendants Pellegrino and Bledsoe. *Id*. Plaintiff then alleges while lying on the floor, defendant Collins walked up to him and stomped on his head while "they all" laughed at him. *Id*. Plaintiff also alleges defendant Andrews was there and did nothing to stop what was going on. *Id*.

Plaintiff contends he was put on a stretcher and sent to the Tyler County Hospital where, allegedly, all the hospital did was "reshape" his head and send him back to the unit. *Id*. Plaintiff states he was put back in closed custody where he ended up getting in another fight which caused

more injuries to his skull. *Id*.

Plaintiff contends further he was assaulted again on May 23, 2016. *Id*. Plaintiff states he was slammed into a wall in the medical facility and then slammed to the floor. *Id*. Plaintiff also alleges he was punched in the face, kicked in the stomach and in the head at least ten times. *Id*. Plaintiff then states he was pulled off the floor unconscious and was told that nothing was wrong with him by medical staff. *Id*.[1] Plaintiff contends he was ultimately taken to his single cell and thrown in his cell without receiving any medical attention. *Id*. Plaintiff does not state who specifically assaulted him on May 23, 2016 but it would appear he makes these allegations against the same defendants involved in the February 19, 2016 incident. *Id*.

With respect to his injuries, plaintiff alleges his skull has "fallen in" on the sides of his forehead giving it a misshaped look. *Id* He states the front part of his forehead is pushed in on the sides and then comes to a cone shape from the back of his skull to the top of his forehead. *Id*. Plaintiff alleges his right eye is lower than his left eye due to broken bones in his face and around his eyes. *Id*. In addition, plaintiff states his nose is broken which causes him to snore really loud and his jaw is broken on both sides.

Plaintiff seeks a declaration that his constitutional rights were violated, $500,000.00 in compensatory damages and $500,000.00 in punitive damages. *Id*.

---

[1] Plaintiff finally amended his claims against the medical defendants, defendants Gray, Mbugua, and Hanson on February 7, 2019 (docket entry no. 177). These claims do not appear to relate to the February 19, 2016..

Motion for Summary Judgment

Defendants filed an Amended Motion for Summary Judgment on July 24, 2019 (docket entry no. 184).[2] Defendants argue plaintiff has failed to exhaust his administrative remedies, his official capacity claims are barred by Eleventh Amendment immunity, and they are entitled to qualified immunity. The defendants rely on the following in support of their motion for summary judgment:

**Exhibit A:** TDCJ Grievance Records relating to Use of Force Report No. M-01063-02-16;

**Exhibit B:** TDCJ Correctional Managed Care, Health Services Archives relating to Use of Force Report No. M-01063-02-16;

**Exhibit C:** TDCJ Use of Force Report No. M-01063-02-16;

**Exhibit D:** TDCJ Grievance Records relating to Use of Force Report No. M-03168-05-16;

**Exhibit E:** TDCJ Correctional Managed Care, Health Services Archives relating to Use of Force Report No. M-03168-05-16;

**Exhibit F:** TDCJ Use of Force Report No. M-03168-05-16.

Plaintiff has not filed a formal reply to the motion for summary judgment. Plaintiff did file what appear to be exhibits in response (docket entry no. 185). However, the majority of the information contained in the exhibits are not legible as they were written in pencil.[3] Plaintiff's Amended Complaint, however, filed January 17, 2017 (docket entry no. 29) is verified and

---

[2]Defendants filed their original Motion for Summary Judgment on September 17, 2018 (docket entry no. 157). After reviewing the motion, the Magistrate Judge determined some grievances were not provided. The Magistrate Judge ordered the defendants to re-file their Motion for Summary Judgment with a complete record of plaintiff's grievances relating to both the February 19, 2016 and May 23, 2016 incidents at issue (docket entry no. 178).

[3]The only thing that is legible is plaintiff's notice to the clerk to scan the exhibits as dark as possible. The Clerk of Court noted that this document was scanned in using the darkest settings available.

3

considered competent summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 76 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine dispute of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th cir. 1988). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine dispute of material fact remains for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the

4

pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. *Celotex*, 477 U.S. at 322-23; *ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted). Furthermore, there must be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," unsubstantiated assertions, or the presence of a "scintilla of evidence" is not enough to create a real controversy regarding material facts. *See, e.g. Lujan v. National Wildlife Federation*, 497 U.S. 871, 902; *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir. 1994). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## Discussion and Analysis

*Exhaustion*

In 1996, Congress enacted the PLRA, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners in order to give correctional officers an opportunity to address complaints internally before initiation of a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 524-25

(2002). The exhaustion requirement applies to all inmate lawsuits concerning prison life, whether they involve general circumstances or particular episodes. *Id.* at 532. The Supreme Court later reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Exhaustion also requires that a prisoner satisfy the requirement of "proper exhaustion." *Id.* at 83. In *Jones v. Bock*, the Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." 549 U.S. 199, 211 (2007). The Supreme Court added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 216. The Fifth Circuit has also added that after *Jones v. Bock*, a complaint is still subject to dismissal for failure to state a claim where the prisoner's failure to exhaust appeared on the face of the complaint. *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007).

The Texas Department of Criminal Justice, Correctional Institutions Division, has a two-step grievance procedure available to inmates. *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). Step 1 of the grievance procedure involves the prisoner submitting a grievance to the unit grievance coordinator. The unit grievance coordinator then investigates the grievance, collects documents and other evidence, interviews witnesses, drafts an investigation report of findings, and prepares a recommendation for the review of the decision maker. The authorized decision maker for a Step 1 grievance is the unit warden or assistant warden. *Id*.

Step 2 of the grievance procedure involves the prisoner submitting an appeal to the division grievance investigator at prison headquarters. The division grievance investigator then investigates

the grievance, collects documents and other evidence, interviews witnesses, drafts an investigation report of findings and prepares a recommendation for the review of the decision maker. The decision maker for a Step 2 grievance is the regional director or assistant director. *Id*.

The grievance procedure takes approximately ninety days to exhaust. Prisoners are allowed fifteen days to file a Step 1 grievance. The first response is due forty days from receipt of the grievance. The prisoner than has ten days to appeal the Step 1 grievance by filing a Step 2 grievance. Prison officials involved with Step 2 grievances have forty days from receipt of the grievance to complete the investigation and respond to the grievance. *Id.* The prisoner must pursue the grievance through both steps for his claim to be exhausted. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

*February 19, 2016 Incident*

Defendants argue plaintiff failed to properly exhaust his administrative remedies with respect to the February 19, 2016 incident. Specifically, defendants argue plaintiff's Step 1 Grievance was untimely. The Court has reviewed all the relevant grievances provided by the defendants as summary judgment evidence. Only one grievance was filed by plaintiff and actually taken through completion to the Step 2 Grievance phase, Grievance No. 2016108110. Exhibit A, pgs. 3-5 (docket entry no. 188). A review of this grievance reveals that TDCJ did not deny the grievance as untimely. In fact, an Office of Inspector General ("OIG") investigation was initiated as a result of the grievance. Ultimately, however, the OIG found insufficient evidence to warrant opening a formal investigation.

Courts are free to find that exhaustion has been satisfied in certain circumstances where procedural requirements for filing a timely and proper grievance are ignored and the claims asserted therein are instead denied on their merits. For example, the exhaustion requirement is satisfied when the institutional decision-maker denies a grievance on the merits even though it could have been resolved for failure to comply with a procedural requirement, such as the fifteen-day requirement for filing a Step 1 grievance from the complained-of incident. *See Jackson v. Gordin*, 2018 WL 1156013 *5 (S.D. Tex. Jan. 8, 2018) (citing *Eubanks v. Naik*, 2014 WL 1117408, at *4 (S.D. Tex. Mar. 19, 2014)); *see also Gates v. Cook*, 376 F.3d 323, 331 & n. 6 (5th Cir. 2004) (holding that prison officials could not argue that a prisoner's grievance failed to comply with procedural rules when the officials had looked past the purposed technical defect and rejected the grievance for substantive reasons). "[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action." *Riccardo v. Raush*, 375 F.3d 52, 524 (7th Cir. 2004). Plaintiff's grievance was clearly resolved on the merits in this case. As such, defendants' Motion for Summary Judgment for failure to exhaust administrative remedies as to the February 19, 2016 should be denied.

*May 23, 2016 Incident*

Defendants argue plaintiff failed to exhaust his administrative remedies as to the May 23, 2016 for failure to identify and name the defendants in connection with the use of force on this date. A review of the grievances attached as summary judgment evidence reveals that only two grievances discuss the May 23, 2016 use of force and were exhausted through the Step 2 grievance level.

In Grievance No. 2016148314, plaintiff complains he was punched, kicked, slapped and had his head slammed to the ground several times. *See* Exhibit D, pg. 4-5 (docket entry no. 188). Plaintiff alleged three unidentified correctional officers, one of whom was an "African-American female officer," used excessive force against him. *Id*. At the time of filing this grievance, plaintiff knew the identities of the defendants in this suit as evidenced by his prior grievances against them. Despite this, plaintiff failed to identify any of them in this grievance.[4]

In Grievance No. 2016150242, plaintiff complained "Nurse Mattox" denied him medical care on May 23, 2016 after the use of force. *See* Exhibit D, pg. 32 (docket entry no. 188). This grievance complained of a lack of medical care solely. Furthermore, plaintiff does not mention defendants Andrews, Bledsoe, Collins and Pellegrino in this grievance.

As plaintiff failed to identify defendants Andrews, Bledsoe, Collins and Pellegrino as officers involved in the May 23, 2016 use of force, defendants' Motion for Summary Judgment for failure to exhaust administrative remedies as to the May 23, 2016 incident should be granted.

*Eleventh Amendment Immunity*

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. 11. "Although by its terms the Amendment applies only to suits against a State by citizens of another State, . . . the Amendment's applicability [has been

---

[4] A review of the summary judgment evidence concerning the May 23, 2016 Use of Force reveals that the officers involved in this incident were Kendrick King CO III, Beatrice Spears CO II, Lieutenant Jonathan Reynolds, Sergeant Kimpton Lewis, Michael Dees CO IV, and Jared Evans. None of these individuals are listed as defendants in this suit. *See* Exhibit F (docket entry no. 188).

9

extended] to suits by citizens against their own States." *Bd. of Trustees of the Univ. Of Ala. v. Garrett*, 531 U.S. 356 (2001). The Supreme Court held in *Ex parte Young* that the doctrine of sovereign immunity bars suit against a state agency because, in such a case, the State itself is the real party in interest. 209 U.S. 123 (1908). Consequently, such a lawsuit is barred whether it seeks damages or injunctive relief. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 101-02 (1984).

Under the Eleventh Amendment, states or their agencies may not be sued unless they have consented to the particular type of suit. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst*, 465 U.S. at 100. A state's consent to suit may also create conditions under which suit against it may be brought. For example, the Texas Tort Claims Act allows an individual to bring claims against the State of Texas, but provides that all such claims must be brought in state court. TEX. CIV. PRAC. & REM. CODE § 101.102(a)(Vernon 1997) ("A suit under this chapter shall be brought in state court in which the cause of action or a part of the cause of action arises."). Congress may act to permit suit despite Eleventh Amendment immunity, but must do so specifically. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985).

TDCJ is an agency of the State of Texas and is immune from suit under the Eleventh Amendment. *Harris v. Angelina County*, 31 F.3d 331, 338 (5th Cir. 1994) (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1136-1137 & n. 75) (5th Cir. 1982)) (dismissing claims against the Board of the predecessor of the TDCJ, because the Board of was "merely an agency of the state"), *cert. denied*, 460 U.S. 1042 (1983); *Loya v. Texas Dep't of Corrections*, 878 F.2d 860, 861 (5th Cir. 1989) (holding the predecessor to the TDCJ immune from suit under Eleventh Amendment). As such,

plaintiff's claims against the defendants in their official capacities is barred as Eleventh Amendment immunity extends to suits for monetary damages against state officials in their official capacities as well. *See Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 609 n. 10(2001) (recognizing that "[o]nly States and state officers acting in their official capacity are immune from suits for damages. . .").

*Qualified Immunity*

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Federal courts use a two-part test to determine whether the defendants are entitled to qualified immunity. *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004). The court must determine whether plaintiffs allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736; *Freeman*, 369 F.3d at 863. If a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The district court has discretion to decide which prong of the two-part test to address first. *Pearson v. Callahan*,

555 U.S. 223, 236 (2009). Regardless of whether a constitutional right was violated, if it is evident to the court that the law is not clear on whether the defendant's actions would constitute a violation, the court does not need to reach the question of whether a constitutional violation occurred at all. *Id*.

In order to overcome a defendant's entitlement to qualified immunity, a plaintiff must satisfy a three-part test. *Kipps v. Callier*, 197 F.3d 765, 768 (5th Cir. 1999) (citing *Morris v. Dearborne*, 181 F.3d 657, 665 (1999)). First, a plaintiff must allege the deprivation of a constitutional right. *Wilson v. Layne*, 526 U.S. 603, 603-04 (1999); *Morris*, 181 F.3d at 665. Second, a plaintiff must allege the violation of a right that was clearly established at the time of the alleged violation. *Wilson*, 526 U.S. at 604. Finally, a plaintiff must produce competent summary judgment evidence that demonstrates that the violation occurred or at least gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established right. *Kipps*, 197 F.3d at 768 (citing *Morris*, 181 F.3d at 666). If a plaintiff meets this burden, then the court must decide whether the conduct was nonetheless "objectively reasonable," as a matter of law. *Eugene v. Alief ISD*, 65 F.3d 1299, 1305 (5th Cir. 1995). A plaintiff fails to satisfy either of these requirements with conclusory allegations of wrongdoing. *Geter v. Fortenberry*, 849 F.2d 1550, 1555 (5th Cir. 1988).

Use of force is excessive and violates the Eighth Amendment only if it is applied "maliciously and sadistically for the purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Pursuant to *Hudson v. McMillian*, defendants argue plaintiff's

claim for excessive use of force lacks merit. 503 U.S. 1, 7 (1992). *Hudson* laid out five factors for a court to consider when evaluating an excessive use of force claim: (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between that need and the amount of forced used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. The core judicial inquiry in an excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (citing *Hudson*, 503 U.S. at 7)).

Defendants' argument in the motion for summary judgment consists of four main components. First, defendants argue the competent summary judgment evidence shows the use of force on February 19, 2016 was justified and executed within constitutional parameters. Second, they argue the evidence establishes plaintiff's head accidentally made impact with the floor only causing minor *de minimis* injuries such as bruising to plaintiff's forehead and left side of his face. Third, they argue the medical records establish plaintiff has been diagnosed with a psychological delusional disorder which demonstrates plaintiff's alleged injuries are contrived and not supported by the record. And , fourth, they contend the evidence demonstrates defendant Andrews neither witnessed nor participated in the use of force or the post-use-of-force medical screening or investigation.

Plaintiff's version of events in his verified Amended Complaint are in direct contrast to the accounts provided by the defendants. This Court is required to take plaintiff's allegations in the light most favorable to him. As outlined above, plaintiff alleges he was picked up in the air and slammed

into a cell door while handcuffed with his hands behind his back. Amended Complaint (docket entry no. 29). Plaintiff contends he was then slammed to the floor, punched in the face, stomach, back, legs, and thighs and his head was slammed to the floor at least two times. *Id*. Plaintiff states this was done by defendants Pellegrino and Bledsoe and then while lying on the floor, defendant Collins walked up to him and stomped on his head while "they all" laughed at him. *Id*. Plaintiff finally contends defendant Andrews was also there and did nothing to stop what was going on. *Id*. After the use of force was over, plaintiff states he was put on a stretcher and sent to the Tyler County Hospital where, allegedly, all the hospital did was "reshape" his head and send him back to the unit. *Id*.

In analyzing the *Hudson* factors, the defendants conveniently ignore plaintiff's version of the events. Specifically, the question of whether slamming a prisoner to the floor, punching him in the face, stomach, back, legs and thighs, stepping on his head, all while restrained, can be considered a legitimate use of force. The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 36 (citing *Hudson*, 503 U.S. at 7). The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, *provided* that the use of force is not a sort repugnant to the conscience of mankind." *Id*., at 8 (citing *Wilkins*, 550 U.S. at 9-10) (emphasis added). Furthermore, while the Court concedes plaintiff's stated injuries are inconsistent with those reported in the medical records, this Court cannot simply ignore plaintiff's version of events. Defendants overtly invite the Court to find their version of the facts and evidence more credible than plaintiff's which is clearly a

credibility determination left to a jury. Based on the current record, there is a genuine dispute of material fact as to whether the defendants slammed plaintiff to the ground, repeatedly kicked and punched him, stepped on his head, while restrained, whether defendant Andrews was personally involved in the incident and had a reasonable opportunity to prevent harm to plaintiff and chose not to act[5], and whether this type of force could be considered a good-faith effort to maintain or restore discipline. Furthermore, there is a clear genuine dispute of material fact as to plaintiff's injuries. Defendants are not entitled to qualified immunity at this stage with respect to the February 19, 2016 use of force. The Motion for Summary Judgment as to plaintiff's claim for excessive use of force against the defendants in their individual capacity should be denied.

## ORDER

Defendants' Motion for Summary Judgment (docket entry no. 184) is **DENIED** in part and **GRANTED** in part. Specifically, the Motion for Summary Judgment as to plaintiff's official capacity claims is **GRANTED**. The Motion for Summary Judgment as to plaintiff's individual capacity claims against the defendants for excessive use of force as to the May 23, 2016 use of force is **GRANTED** for failure to exhaust administrative remedies. The Motion for Summary Judgment as to plaintiff's individual capacity claims against the defendants for excessive use of force and bystander liability as to the February 19, 2016 for failure to exhaust administrative remedies is **DENIED**. Finally, the Motion for Summary Judgment asserting qualified immunity as to plaintiff's

---

[5]Plaintiff, in essence, makes a claim that defendant Andrews violated his rights through bystander liability. An officer found liable under a theory of bystander liability does not use force directly against the plaintiff. Instead, bystander liability is established when and officer (1) knew that a fellow officer was violating plaintiff's Eighth Amendment right against cruel and unusual punishment; and (2) had a reasonable opportunity to prevent harm to plaintiff; and (3) chose not to act.

individual capacity claims against the defendants for excessive use of force and bystander liability as to the February 19, 2016 is **DENIED**.

So **ORDERED** and **SIGNED January 9, 2020.**

_____
Ron Clark, Senior District Judge